UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KATIE CASTLE,                                )
                                             )
        *Plaintiff*,                         )        No. 2:20-cv-00080-TRM-SKL
                                             )
v.                                           )
                                             )
COMMISSIONER OF SOCIAL SECURITY,             )
                                             )
        *Defendant*.                         )

## REPORT AND RECOMMENDATION

Plaintiff Katie Castle ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for judgment [Doc. 20 & Doc. 22] and filed supporting briefs [Doc. 21 & Doc. 23]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 20] be **GRANTED**; (2) the Commissioner's motion for summary judgment [Doc. 22] be **DENIED**; and (3) the decision of the Commissioner be reversed and remanded for further proceedings.

## I.    ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 14 ("Tr.")], Plaintiff protectively filed applications for DIB and SSI on August 2, 2016, alleging disability beginning May 1, 2016. Her claims were denied initially and on reconsideration. A hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") on December 19, 2018. On March 12, 2019, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") at any relevant time. The Appeals Council denied

Plaintiff's request for review on February 11, 2020, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on April 9, 2020, within sixty-five days of the final decision (Tr. 2).

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on May 20, 1992 (Tr. 23), making her a "younger person" at all relevant times. 20 C.F.R. § 404.1563(c). She has at least a high school education and is able to communicate in English. She has past relevant work as a phlebotomist, a caregiver/home attendant, a sales clerk in a pharmacy setting, a clothing sales clerk, and a kitchen worker/dietary aide. These jobs are either unskilled or semi-skilled, and range from a light-level exertional requirement to heavy.

### B. Medical Records

Plaintiff alleges disability due to depression, social anxiety, polycystic ovarian disease, borderline diabetes, high blood pressure, "tumor on left foot," and anemia (Tr. 231). The extensive medical records have been carefully reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on December 19, 2018, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The transcript of the hearing has also been carefully reviewed.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is

3

capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010) (citations omitted).

## B.    The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through June 30, 2021 (Tr. 17). At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date. At step two, the ALJ found Plaintiff had the following severe impairments: (1) arteriovenous malformation ("AVM")[1] of the left foot, (2) obesity, and (3) adjustment disorder with depressed mood and unspecified anxiety disorder (Tr. 17). The ALJ found Plaintiff had non-severe polycystic ovarian disease, high blood pressure, and anemia (Tr. 18). The ALJ also found Plaintiff's alleged diabetes was not a medically determinable impairment (Tr. 18). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations:

- She can only occasionally perform postural movements (climbing ramps and stairs, balancing, stooping, kneeling, and crouching).

- She can never climb ropes, ladders, or scaffolds, and she can never crawl.

- She cannot operate foot controls with her left lower extremity.

- She must avoid concentrated exposure to fumes and even moderate exposure to hazards.

---

[1] Plaintiff describes AVM as "an abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation." [Doc. 21 at Page ID # 718 n.1 (citations omitted)].

4

- She is limited to simple, unskilled job tasks.

(Tr. 19).

At step four, the ALJ determined Plaintiff was incapable of performing her past relevant work during the period at issue (Tr. 23). At step five, however, the ALJ decided that Plaintiff was capable of performing other work existing in significant numbers in the national economy, including as a microfilm document preparer, a food/beverage order clerk, and in production work as a printed circuit board screener inspector (Tr. 24). These findings led to the ALJ's conclusion that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the decision (Tr. 24).

## IV. ANALYSIS

Plaintiff submits the ALJ's decision is not supported by substantial evidence. Plaintiff "would request a decision on the record" [Doc. 21 at Page ID # 730], presumably meaning a reversal of the ALJ's decision and remand to the SSA for further administrative proceedings.[2] Plaintiff asserts the following errors with the ALJ's decision:

> 1. "The ALJ erred in failing to apply the 'treating physician rule' to the opinion of Dr. William Platt and further failed to give good reasons for not giving the opinion controlling weight." [*Id.* at Page ID # 724].
>
> 2. The RFC is not supported by substantial evidence, because the ALJ "failed to consider the impairments of migraine headaches and frequent urination" [*id.* at Page ID # 727], and "failed to provide for the claimant to elevate her left foot." [*Id.* at Page ID # 730].

---

[2] When the SSA "misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175-76 (6th Cir. 1994); *see also Barker v. Comm'r of Soc. Sec.*, No. 1:15-cv-262, 2016 WL 3448583, at *3 n.1 (E.D. Tenn. June 17, 2016) (citing *Faucher*, 17 F.3d at 174).

5

3. "There are not significant numbers of jobs available to the Claimant under the RFC as provided by the ALJ." [*Id.* at Page ID # 729].

## A.   Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

6

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

## B.    The Opinion of Dr. William Platt

Plaintiff first argues that the ALJ erred in his consideration of the opinions set forth in the medical source statement of Dr. William Platt.[3]

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight" to assign to medical opinions from treating sources, examining sources, and state agency physicians (or psychologists), who simply review a claimant's medical record. *See Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir.

---

[3] The Sixth Circuit approves of the separate consideration of individual opinions within a treating physician's overall medical source statement. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464-65 (6th Cir. 2005); *see also Pellegrino v. Comm'r of Soc. Sec.*, No. 5:18CV-2644, 2020 WL 1428888, at *3 (N.D. Ohio Mar. 24, 2020) ("An ALJ can be found to have provided good reasons for one aspect of a treating physician's opinion, while simultaneously failing to provide good reasons for another part of that opinion." (citing *Hall*, 148 F. App'x at 464-65)). This report and recommendation will sometimes refer to the various statements set forth in the medical source statement as Dr. Pratt's opinion (in the singular), but will also sometimes refer to the individual opinions contained in the medical source statement.

7

2012) (citing 20 C.F.R. § 404.1545(a)(3)). The regulations establish a hierarchy for these opinions, with treating source opinions at the top, followed by the one-time consultative examiners, then the state agency physicians.

Under the so-called "treating physician rule," a medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[4] 20 C.F.R. §§ 404.1527; 416.927; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed by balancing several factors: 'length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.'" *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 959 (6th Cir. 2020) (quoting *Gayheart*, 710 F.3d at 376). "In all cases, the treating-source opinion is entitled to deference, even if not controlling, and cannot be completely disregarded." *Id.* (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

"In addition to balancing the above factors, an ALJ is required to provide 'good reasons' for the weight [he or she] assigns the treating-source opinion." *Id.* (citing *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)) (other citations omitted). In doing so, the ALJ is not required to engage

---

[4] Regulatory changes have altered the consideration of medical opinions, including abrogation of the treating physician rule as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). As acknowledged by the Commissioner [Doc. 23 at Page ID # 742, n.2], Plaintiff's application was filed on August 2, 2016, so the treating physician rule remains applicable to her case.

8

in a protracted discussion of those reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)). The reasons must, however, be supported by evidence in the record and "must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating-source opinion and reasons for that weight." *Thaxton*, 815 F. App'x at 960 (citations omitted). "Giving good reasons for the weight assigned to a treating-source opinion serves the purpose of letting 'claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not.'" *Id.* (quoting *Cole*, 661 F.3d at 937-38 (alteration in original)). "The failure to comply with these procedural requirements 'warrants a remand unless it is harmless error.'" *Id.* (quoting *Gentry*, 741 F.3d at 723).

Failure to comply with the treating physician rule may be deemed harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though [he] has not complied with the terms of the regulation.

*Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 423 (6th Cir. 2013) (quoting *Cole*, 661 F.3d at 940 (alteration in original; other citation omitted).

Addressing the third reason a failure to comply may be considered harmless, the United States Court of Appeals for the Sixth Circuit has said that "harmless error is saved for the 'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'" *Thaxton*, 815 F. App'x at 960 (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)).

9

"The goal is to provide sufficient notice to a claimant and not offend a claimant's rights to due process." *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009)).  To meet this goal, the ALJ, "at the very least, must *implicitly* provide sufficient reasons for giving less weight to treating-source opinions; merely indicating a rejection of the treating-source opinion is not enough."  *Id.* (quoting *Nelson*, 195 F. App'x at 470) (further discussing how, in *Nelson*, the court found that an ALJ's discussion of the record as a whole "sufficiently showed that two treating-source opinions were not consistent with the record, even though discussion of those treating-source opinions was brief").  Significantly, a "procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546 (6th Cir. 2004) (quotation marks and citations omitted).

Turning to the parties' treating-physician-rule arguments, Dr. Platt is the treating physician who treated Plaintiff's left foot AVM at Appalachian Rehabilitation.  He began treating Plaintiff on March 29, 2017, and saw her about every three months.  He completed a check-list medical source statement dated December 4, 2018, which sets forth the following opinions and limitations related to Plaintiff's AVM:

- She could not walk more than a city block without resting or experiencing severe pain.

- She should not walk on rough or uneven ground or climb stairs.

- She would "have problems" with balance, stooping, crouching, and bending.

- She could only stand or walk up to one or two hours in an eight-hour workday.

- She would "reasonably be required to take unscheduled breaks which would require being away from the work area . . . due to having to lay down, elevate her left leg or due to pain."

10

- She would not have the ability to use leg controls or foot pedals.

- She would need to elevate her left leg more than 15% of an eight-hour workday.

- She would frequently experience pain and discomfort severe enough to interfere with the "attention and concentration needed to perform simple work tasks."

- She would be "off task" more than 15% of an eight-hour workday due to her "limitations including pain."

- Her impairments would be expected to last six months or longer.

(Tr. 637-38). Dr. Platt also checked boxes indicating his opinions were based on Plaintiff's "History & Medical File," "Progress and office notes," "Physical examinations," and "X-Rays, CT Scans or MRIs." (Tr. 638). In addition to Dr. Platt's medical source statement, the record contains about 30 pages of Plaintiff's medical records from Appalachian Rehabilitation.

Related to Dr. Platt medical source statement, the ALJ wrote:

> Dr. William Platt submitted a medical source statement [indicating that Plaintiff] would have problems standing and walking, could stand or walk one to two hours in an eight-hour workday, would need unscheduled breaks, could not use foot controls, would need to elevate her leg and would frequently cause pain [sic] (Exhibit 14F).
>
> . . . .
>
> As for the opinion evidence, the undersigned gives little weight to the State agency medical consultants' assessments (Exhibits 1A, 2A, 6A and 7A), that the claimant could perform a range of light exertion. The AVM of the left foot clearly shows the claimant would be restricted to performing only sedentary work. This is supported by the treatment records showing ongoing treatment as well as antalgic gait.
>
> The undersigned gives some weight to Dr. Leveck's consultative assessment as noted above, as well as Dr. Platt's statement. The undersigned has restricted the claimant to performing a reduced range of sedentary exertion due to AVM of

11

her left foot, but the combination of her physical and mental restrictions would not preclude her from performing all work. The record does support limiting her to sedentary jobs which do not require the use of foot controls on the left.

(Tr. 21, 22).

As a preliminary matter, I note (as the Commissioner does) that there are many similarities between Plaintiff's RFC as assessed by the ALJ and aspects of Dr. Platt's opinions. For example, the ALJ limited Plaintiff to sedentary work, consistent with Dr. Platt's opinion that Plaintiff could stand and/or walk up to one or two hours in an eight-hour workday. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (explaining that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday" in a sedentary job). Dr. Platt indicated Plaintiff would have "problems with stooping, crouching, and bending" and with "balance when ambulating" (Tr. 637); similarly, the ALJ limited Plaintiff to only occasional postural movements. Both the ALJ and Dr. Platt indicated Plaintiff could not use foot controls with her left foot.[5] Dr. Platt "recommended" that Plaintiff not climb stairs, and the ALJ limited Plaintiff to only occasional stair climbing, and no climbing of ropes, ladders, or scaffolds. The ALJ found Plaintiff must avoid "even moderate exposure to hazards," and Dr. Platt similarly recommended that Plaintiff not walk on "rough or uneven ground." (Tr. 637). Accordingly, to the extent the ALJ erred by not providing an adequate explanation concerning these opinions, any such error is harmless because the RFC incorporates these or very similar opinions.

---

[5] Dr. Platt's opinion does not specify no use of foot controls with the *left* foot; however, Plaintiff does not contend she has any issues with her right foot.

12

However, there are additional opinions in Dr. Platt's medical source statement that the ALJ did not incorporate into his RFC assessment. These opinions are provided in the statement in the following checked responses:

> k.      Would your patient reasonably be required to take **unscheduled breaks which would require being away from the work area** during an 8-hour work day due to her foot, ankle or leg problems either due to having to lay down, elevate her left leg or due to pain?   _X_ YES       ___ NO
>
> . . . .
>
> m.      With prolonged sitting or standing, would your patient need to elevate her left leg due to any condition for which you are treating her? _X_ YES ___ NO.  If your answer is yes, please list what condition would be expected to require such elevation.  _Arteriovenous Malformation_  and what percentage of time during an 8-hour work day should the patient's leg(s) reasonably be required to be elevated?
>
>              ___ less than 15%      _X_ more than 15%
>
> . . . .
>
> 5.      How often during a typical workday is your patient's experience[] of **pain and discomfort** severe enough to interfere with **attention and concentration** needed to perform simple work tasks?
>
>              ___ Rarely      ___ Occasionally      _X_ Frequently
>              ___ Constantly
>
> 6.      Based upon your patient's physical limitations, what percentage of an 8-hour workday in a competitive work environment would your patient be "off task," that means either unable to perform work and/or away from the work environment due to all of your patient's limitations, including pain?
>
>      ___ less than 5%      ___ 5% to 15%      _X_ more than 15%

(Tr. 637-38 (emphasis in original)).

Regarding these opinions in the medical source statement, Plaintiff argues "[t]here was no explanation given as to why" the ALJ "did not adopt the opinion of Dr. Platt as a treating source as is required by the regulations." [Doc. 21 at Page ID # 726]. Plaintiff argues Dr. Platt's opinion "is well supported by the evidence in the record and supported in part from the consultative examination of Dr. Leveck." [*Id.* at Page ID # 727]. Regarding the factors, Plaintiff points out Dr. Platt is a pain management physician who treated Plaintiff for pain in her left foot caused by AVM, and that he indicated his opinion is "based off of her condition, her reports of pain, his physical exams indicating tenderness of the left foot, abnormal gate, swelling over the foot and observations of how she must only stand on the heel of her left foot with weight bearing." [*Id.* at Page ID # 726].

The Commissioner concedes the ALJ did not discuss Dr. Platt's opinions in detail in the particular section of the ALJ's decision that Plaintiff cites, but argues the ALJ "considered and discussed" the "overall record of evidence" elsewhere in the decision, and in so doing, identified evidence inconsistent with Dr. Platt's opinions, such that the ALJ did not err in declining to assign controlling weight to the opinions [Doc. 23 at Page ID # 743-45].[6]

---

[6] Although the Commissioner observes that Dr. Platt's opinions are provided on a "checklist-type form" [Doc. 23 at Page ID # 742], the Commissioner does not argue the opinions are "patently deficient" such that the any failure to comply with the treating physician rule is harmless error. Indeed, the Commissioner does not address harmless error at all. The checklist opinion/patently deficient issue is commonly raised in SSA cases, so the Commissioner's decision not to raise it in this case is telling, and I find any argument to that effect has been waived by the Commissioner. *See McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones." (quoting *Ruffin v. Cuyahoga Cnty.*, 708 F. App'x 276, 278 (6th Cir. 2018) (quotation marks omitted)). Moreover, I note that the Sixth Circuit has held that "checklist opinions are not *per se* unreliable," particularly when they are accompanied by an explanation from the treating physician. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016). Dr. Platt's statement indicates his opinions are based on Plaintiff's AVM diagnosis, and supported by Plaintiff's history and medical file; progress and office notes; physical examinations; and X-Rays, CT Scans or MRIs (Tr. 638). As previously noted, the record contains approximately 30 pages of these records. Moreover, the ALJ did not state that he had discounted

14

One problem with the Commissioner's argument is that the ALJ did not actually discuss any evidence inconsistent with the disputed aspects of Dr. Platt's statement (i.e., regarding need to be off task, need for unscheduled breaks,[7] and need to elevate leg at least 15% of the workday). It is undisputed that Plaintiff's AVM causes her significant problems and pain, as reflected in her records with Dr. Platt, consultative examiner Dr. Leveck's opinion, and even in the ALJ's own findings. Other than continued pain management with medication, Plaintiff's only viable treatment option appears to be amputation of the left foot and leg below the knee (Tr. 21).

To support his position that Dr. Platt's opinions are inconsistent with the overall record of evidence, the Commissioner argues:

> While the ALJ gave some weight to Dr. Platt's opinion, the opinion was not fully consistent with the overall record of evidence as considered and discussed by the ALJ (Tr. 20-21). For instance, while Dr. Platt opined that Plaintiff would have problems with balance while ambulating (Tr. 637), the ALJ discussed medical records, including records from Dr. Platt, that indicated Plaintiff had good balance and ability to ambulate without assistance (Tr. 20-21, 526, 552, 608, 617, 621). Nor were Dr. Platt's more extreme limitations consistent with Plaintiff's activities of daily living that

the opinions expressed by Dr. Platt because they were offered on a checklist form, or otherwise acknowledge the format of Dr. Platt's opinions at all.

[7] While some district courts within the Sixth Circuit have held that a treating physician's opinions regarding how a claimant's pain "would affect her absenteeism, ability to stay on task, and need for nonstandard breaks," are not medical opinions entitled to any special deference under the treating physician rule, *see, e.g., Yousif v. Berryhill*, No. 16-13470, 2017 WL 5493139, at *3 (E.D. Mich. Oct. 12, 2017) (citing cases from the Eastern and Western Districts of Michigan); *Pellegrino v. Comm'r of Soc. Sec.*, No. 5:18CV2644, 2020 WL 1428888, at *4 (N.D. Ohio Mar. 24, 2020) (citing cases), the Commissioner does not make, and thus has waived, such an argument here, *see McGrew*, 937 F.3d at 669. Moreover, the definition of "medical opinions" at 20 C.F.R. § 404.1527(a)(1) includes statements about "the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Even if some of the opinions in Dr. Platt's statement regarding being off-task and needing unscheduled breaks are not properly considered "medical opinions," the opinion regarding Plaintiff's need to elevate her legs appears to be a medical opinion under the language of § 404.1527(a)(1). Also, the ALJ did not find that any of Dr. Platt's opinions are not appropriate medical opinions entitled to special deference under the treating physician rule.

15

included watching television, reading, playing video games, shopping in stores and online, preparing meals, and performing household chores (Tr. 19, 22, 241-43, 526).

[Doc. 23 at Page ID # 745].

The Commissioner is correct that the ALJ cited Plaintiff's ability to "watch television, read, listen to music, play video games, shop online, prepare meals and perform household chores," as support for his determination that Plaintiff retained the ability to perform a limited range of sedentary work (Tr. 22).[8] But none of this evidence contradicts Dr. Platt's opinions that Plaintiff would need to elevate her left leg 15% of the workday, or that she would need additional unscheduled breaks. With the possible exception of preparing meals and performing some household chores, none of these activities would appear to preclude a person from elevating their leg or taking breaks. Moreover, the records cited by the Commissioner indicate that while Plaintiff can wash dishes (Tr. 526), make her bed, do some small loads of laundry, and "pick up trash" (Tr. 241), she cannot do other types of "house cleaning" or yard work "due to issues with her foot." (Tr. 526).

The other records the Commissioner cites relate to Plaintiff's "good balance," and "ability to ambulate without assistance" [Doc. 23 at Page ID # 745]. They are also not inconsistent with Dr. Platt's opinions regarding Plaintiff's need for breaks and need to elevate her leg.[9] Page 526 of the of the record does not address Plaintiff's balance or ability to walk. Page 552 is from exhibit

---

[8] The ALJ found "[r]ecords and exams throughout have shown some swelling and limping gait, consistent with [AVM], and these, in combination with obesity, would restrict the claimant to performing only sedentary work." (Tr. 22).

[9] Moreover, as discussed above, the Commissioner and Dr. Platt both limited Plaintiff to work that requires a maximum of only two hours of walking per day. The ALJ also limited Plaintiff to only occasional balancing, and found she was required to avoid even moderate exposure to hazards (Tr. 19). This is consistent with Dr. Platt's opinion that Plaintiff would "have problems with balance." (Tr. 637).

16

9F of the record, which was not cited or discussed by the ALJ. Page 608, a record from Dr. Platt's office, states that Plaintiff "has a little bit of trouble getting up from the seat and stands with weightbearing through the left heel laterally. Gait is with the knee extended and only partially rolling into foot flat and, certainly, no toe off. She does, however, demonstrate good balance." Pages 617 and 621, also records from Dr. Platt's office, both state that Plaintiff was "able to come sit to stand and ambulate but weightbearing on the heel area only." Dr. Platt's records indicate that Plaintiff's inability to walk normally causes her pain, and that she is "very limited as far as her walking," and cannot "stand for long period of time." (*See, e.g.,* Tr. 619).

The Commissioner also correctly notes the ALJ discussed the opinion of the consultative examiner, Dr. Leveck, which the ALJ assigned "some weight" [Doc. 23 at Page ID # 744]. Dr. Leveck found Plaintiff could sit for eight hours out of an eight-hour workday (Tr. 479). Dr. Leveck did not address whether Plaintiff would need additional breaks or whether she would need to elevate her leg. Notably, Dr. Leveck specifically limited his opinion to Plaintiff's current state—noting that she was to have an embolization of her AVM three days after the exam (Tr. 476, 479). As Dr. Platt's records reflect, the embolization "was not helpful," and by October 2017, Plaintiff began experiencing "more swelling in the left leg." (Tr. 606, 615). As such, I do not find the ALJ's discussion of Dr. Leveck's exam results is sufficient to show that Dr. Platt's opinions were "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527).

Moreover, Dr. Platt's medical records reflect that Plaintiff did indeed experience swelling in her foot and leg when in the seated position (Tr. 606, 608, 611, 615 (increased swelling in October 2017)). Even the ALJ acknowledged that "[r]ecords and exams throughout have shown some swelling and limping gait, consistent with [AVM]" (Tr. 22). This is consistent with Dr.

17

Platt's opinion that Plaintiff would require elevation of her left foot at least 15% of an eight-hour workday. And, Dr. Platt's records reflect that he (or others at his office) examined Plaintiff multiple times, he reviewed recent imaging studies from Dr. Mack Hicks, he reviewed Plaintiff's medical history from several different providers from Middle Tennessee and from Kingsport Tennessee, consistent with his statement that his opinions were based on Plaintiff's history and medical file, progress and office notes, physical exams, and "X-Rays, CT Scans, or MRIs." (Tr. 638).

Accordingly, I find the ALJ failed to properly identify the evidence that supports his decision not to assign controlling weight to Dr. Platt's opinions. In other words, the ALJ did not clarify the basis for his determination that Dr. Platt's opinions were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or that the opinions were "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 546 (quoting 20 C.F.R. § 505.1527).

Even if the ALJ had done so, he would still be obligated to provide good reasons, supported by the evidence in the case record, for the "some" weight he gave to Dr. Platt's opinion. In providing "good reasons," he was required to explain his consideration of the relevant factors in 20 C.F.R. § 505.1527. *Wilson*, 378 F.3d at 546. The "ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion *and the reasons for that weight*." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1000 (6th Cir. 2011) (citation and internal quotation marks omitted) (emphasis added). Respectfully, the ALJ's decision misses this mark as it does not permit a meaningful and efficient review of the ALJ's reasons for discounting some of Dr. Platt's opinions.

Perhaps in an attempt to address the "good reasons" aspect of the treating physician rule, the ALJ vaguely referenced how the "record does support limiting [Plaintiff] to sedentary jobs which do not require the use of foot controls on the left foot," and that "the combination of her mental and physical restrictions would not preclude her from performing all work." (Tr. 22). However, this is not a case in which the ALJ's discussion of other medical evidence and opinions in the record provides a clear basis for rejecting some of the treating physician's opinions. An ALJ's broad or conclusory statement rejecting a treating physician's opinion, without giving specific reasons for rejecting it, has been held to require remand. *See Wilson,* 378 F.3d at 545 ("courts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source"); *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").[10]

The only "specific discrepancies" the Commissioner cites that are related to Dr. Platt's disputed opinions are the records of Plaintiff's activities of daily living. But, as discussed above, none of the noted activities preclude the reliability or accuracy of Dr. Platt's opinions. Moreover,

---

[10] The ALJ also did not acknowledge that Dr. Platt was a treating physician with a specialty in pain management who had been treating Plaintiff every three months for over a year at the time of the hearing. *See Karger v. Comm'r of Soc. Sec.,* 414 F. App'x 739, 751 (6th Cir. 2011) ("the ALJ must take into account the length of the treatment relationship, the frequency of examination, the extent of the source's knowledge of the impairments, the amount of relevant evidence supporting the source's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist in the relevant field, and any other relevant factors tending to support or contradict the opinion" (citing 20 C.F.R. § 404.1527(d)) (other citation omitted)).

19

the ALJ did not specifically identify the activities of daily living as providing the basis for his conclusion that some of Dr. Pratt's opinions should receive "the short end of the stick." *See Friend*, 375 F. App'x at 552.

"Notably, courts look to the ALJ's decision itself, and not other evidence in the record, for support. In other words, the requisite evidence and analysis must appear in the ALJ's decision, not simply be present in the rest of the record." *Karger*, 414 App'x at 753 (quotation marks and citations omitted). "The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (citation and quotation marks omitted). Where a failure to provide good reasons has not been shown to be harmless, a court should not hesitate to remand when it encounters ALJ decisions that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. *Id*. at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

For these reasons, I am persuaded the ALJ erred by failing to adequately explain his basis for discounting or rejecting Dr. Platt's opinions regarding Plaintiff's need to be off task, to take unscheduled breaks, and to elevate her left leg more than 15% of the workday. *Cf. Clark v. Comm'r of Soc. Sec.*, No. 18-cv-13758, 2020 WL 358716, at * 3 (E.D. Mich. Jan. 22, 2020) (no violation of treating physician rule where ALJ specifically noted that "there is no mention in any of [Clark's] treatment records about leg elevation," and ALJ specifically cited other "minimal exam findings"); *Tressler v. Comm'r of Soc. Sec.*, No. 3:17 CV 397, 2018 WL 838544, at *8 (N.D. Ohio Feb. 13, 2018) (no violation of treating physician rule where ALJ "*explicitly* declined to impose a leg elevation requirement, relying in part on an analysis of Plaintiff's credibility." (emphasis added)); *Haddix v. Comm'r of Soc. Sec.*, No. 13-CV-12850, 2014 WL 2116853, at *4

20

(E.D. Mich. May 21, 2014) (remanding claim where ALJ "dismissed" the plaintiff's "complaints of foot pain and his need to elevate his feet," in case where treating physician reported that the plaintiff "needs to elevate his legs throughout the day").

I disagree with the Commissioner's argument that the ALJ's discussion of the evidence throughout his decision implicitly clarifies why Dr. Platt's opinions are not entitled to controlling weight, or that the ALJ's discussion otherwise elucidates the "good reasons" the ALJ adopted for rejecting those opinions. This is simply not the "rare case," where the ALJ's discussion of the evidence clearly establishes a valid basis for rejecting a treating physician's opinions. *Thaxton*, 815 F. App'x at 960 (quoting *Nelson*, 195 F. App'x at 472). I find this error is harmful because the VE testified at the administrative hearing that "the frequency with which the claimant would have to elevate her legs and along with that, be off task in a typical work setting" would preclude all work (Tr. 45).

Accordingly, I will recommend that the Court remand this case for reconsideration of Dr. Platt's opinion and therefore, reconsideration of Plaintiff's overall claim.

### C. The ALJ's RFC Assessment (Migraines, Frequent Urination, Foot Elevation)

Plaintiff also argues the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not adequately consider whether Plaintiff had any functional limitations arising from migraine headaches or from frequent urination [Doc. 21 at Page ID # 727-29]. If the above recommendation regarding Dr. Platt's opinion is accepted, it is assumed the ALJ will reevaluate Plaintiff's RFC in light of the ALJ's reconsideration of Dr. Platt's opinion, along with all of the other evidence in the record. Accordingly, I make no recommendation regarding the parties' arguments concerning the impact of Plaintiff's alleged migraine headaches and frequent need to urinate and the impact of those conditions on Plaintiff's RFC.

### D. The ALJ's Step Five Finding

Finally, Plaintiff argues the ALJ erred at step five by finding there are a significant number of jobs available to a person with Plaintiff's RFC. Plaintiff emphasizes that, for the occupations the ALJ identified, there was only a combined total of 850 jobs available in Tennessee. She contends 850 is not a "significant number," as required by the applicable regulations. Plaintiff's argument misses the mark.

Pursuant to 42 U.S.C. § 423(d), an individual can be determined to be disabled only if they cannot do their previous work and cannot "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." The statute goes on to state that "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

At step five, the ALJ found Plaintiff could perform three different occupations: a microfilm document preparer, a food/beverage order clerk, and a printed circuit board screener inspector (Tr. 24). At the hearing, the VE testified that for the microfilm preparer occupation, there were 10,000 to 12,000 jobs available nationally and 200 to 250 in Tennessee; for the food/beverage order clerk, there were 3,500 to 4,000 jobs available nationally and 75 to 100 jobs available in Tennessee; and for the circuit board inspector, there were 12,000 to 16,000 jobs available nationally and 400 to 450 jobs available in Tennessee.

Plaintiff does not address the fact that the statute is *not* limited to jobs available in her immediate area or even in Tennessee generally. Rather, the Commissioner can rely on testimony regarding jobs available in the *national* economy. 42 U.S.C. § 423(d); *see also Taskila v. Comm'r*

*of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (describing how the inquiry at step five focuses on "nationwide jobs, not just jobs in the claimant's locale").  Moreover, there is not a "special number which is to be the boundary between a 'significant number' and an insignificant number."  *Id.* at 906 (citations omitted) (holding that 200 local jobs and 6000 national jobs is sufficient).

This conclusion does not change my recommendation that, because the ALJ failed to properly consider Dr. Platt's opinion in light of the treating physician's rule, remand for further consideration of Plaintiff's claims is proper.

## V.     CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I RECOMMEND[11] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 20] be **GRANTED** for the reasons stated herein;

2) The Commissioner's motion for summary judgment [Doc. 22] be **DENIED**; and

3) The Commissioner's decision denying benefits be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

4)

---

[11] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).